at all, 15 years as a petitioner, and he is to be chaired by his father's, Jeffery Roberts Corp. May I please the court? Jeffery R. Succo for Petitioner Corp. Mining Company. This case concerns whether a former miner is totally disabled due to coal dust exposure, or instead due wholly to smoking. In the year 2000, the Department of Labor revised the Blackeland Regulations to recognize that coal mine dust can sometimes cause disabling impairment even in the absence of x-ray findings. In a document called the Preamble, the Department discussed the medical literature on which it relied to reach its conclusions. It is axiomatic that no studies newer than the year 2000 were considered in that document. But scientific and medical knowledge is not frozen in time. New research has been conducted in the 14 years since the Preamble's issuance that cast doubts on some of its premises. I wish to discuss three matters in which the agency failed to make factual findings and consider necessary evidence. First, the agency failed to consider that coal mining expert Dr. Rosenberg relied on medical research issued after the Preamble to conclude that the miner's impairment is due to smoking and not coal dust. To what extent did Dr. Rosenberg engage with his underlying studies? I mean, we've got the case that was decided in the interim, and the court there basically said it was fine to rely on the Preamble, and pretty much said that the coal company there was not engaging with the scientific evidence. And what distinguishes this case from that case in the way that Dr. Rosenberg presented his opinion? Because I believe he was the expert in the other case as well, right? The case you're referring to is Sterling, yes. He was the expert in that case, and he relied on some of the same studies in that case as he did in this case. The difference between Sterling and this case is that the argument about whether the Preamble's position can be considered invalid or erroneous in light of new studies was not presented for the court's argument, and the court did not rule on it. In fact, in Sterling, and if I may quote Sterling, the court expressly left open the argument that I'm making today. Central Ohio, this is from Sterling, Central Ohio does not challenge the substance of the DOL's position as articulated in the regulations preamble. That is, Central Ohio does not argue that COPD resulting from coal dust exposure is not correlated with a reduced ratio. And it went on, were Central Ohio to make that argument, this court would need to engage the substance of that scientific dispute. Right, and that's what I'm getting at. To what extent did Dr. Rosenberg give testimony that truly engaged with that scientific dispute? He gave testimony in the form of five medical studies that explained, well, for one thing, explained why a classic measure of obstruction, what's called the FEB1 ratio, decreases with respect to cigarette smoke, but not with respect to coal mine dust exposure. So they can be distinguished on that basis. He also cited some of those same studies to explain why the particle size and content with respect to coal mine dust differs dramatically from that of cigarette smoke, and because of that can lead to different types of emphysema in the case of a disabled minor. And finally, he also cited those studies to show that another measure of impairment, what's called the diffusion capacity, tends to be decreased with respect to cigarette smoke-induced obstruction, but not to coal mine dust-induced obstruction. So in that way, Dr. Rosenberg did engage the substance of the preamble to show that these types of substances can be distinguished on the characteristics. Your opposing counsel says that the studies, the attachment, whatever, is identical in this case and the Central Ohio case. The panel that wrote the opinion in the Central Ohio said, well, you know, maybe we would have to engage it if it was raised. They didn't think that same list raised the question. Dr., is it Rosenberg? Yes. He didn't attach any of the studies. He just attached the list of string sites. That's not admissible evidence, certainly. He interpreted in his testimony. But that's not evidence of what the reports really say. How does that raise the question, a factual question? It's just not... Well, I would respectfully disagree with Your Honor that it's not admissible evidence or evidence pertinent to the question of whether it can be distinguished in the qualifications and training to explain the content of those studies. And at no point during the plaintiff's case, the claimant's case, or the DOL's presentation of evidence, did they offer any kind of evidence attacking Dr. Rosenberg's interpretation of those studies, explaining that Dr. Rosenberg is getting those studies wrong? He's attacking the conclusions of the Department of Labor. So you've got one fellow giving the court a string site, or the ALJ a string site, and that overcomes the Department of Labor's position? Well, with respect, it's not a string site. He's offering, I would say, a very detailed summary of what those articles state and how they differ from the P.F. Gramble's position on those. So if he had just put perhaps a citation and not offered any explanation whatsoever, that might be pertinent to your concern. But that's not the case here. Dr. Rosenberg explained in detail about what these studies represented and how they differ from the preamble's findings, and that is relevant evidence. Under the Black-Blown Benefits Act, all relevant evidence must be considered. That's 30 U.S.A. 923 sub B. That evidence was not considered here by the ALJ, and on appeal to the Benefits Review Board, the agency's review body, the board essentially called this the ALJ did not consider the evidence in the form of Dr. Rosenberg's review of post preamble studies. The ALJ did not ultimately need to credit that science. Well, that's not harmless error review. It's not harmless error just because the ALJ ultimately did not need to be persuaded by that. It's harmless if ultimately it would cause no prejudice to the operator, and that's not the case here. Had the ALJ considered that evidence, he may well have been persuaded that the preamble's findings are no longer valid. Another area in which fact-finding was not performed by the ALJ was with respect to Dr. Tudor's opinion. That's another expert opinion that Cordovining offered. Here, the ALJ considered one or two facets of Dr. Tudor's reasoning, but failed to consider any of the other reasoning. Instead, he just discredited the entire opinion and threw out the baby with the bathwater on the basis of one or two aspects of reasoning that the ALJ found invalid. The rest of that reasoning was not considered. Because of that, again, all relevant evidence was not considered in the form of the remainder of Dr. Tudor's opinion, and that evidence could well have helped Cordovining rebut the 15-year presumption, in which case under the 15-year presumption, it shifts the burden of proof to the operator to disprove all elements of entitlement and claim its case. And as a third example of an area in which the agency failed to make necessary fact-findings or consider evidence, here the agency failed to consider whether Mr. Markham's above-ground coal mine employment was substantially similar to his underground coal mine employment. This matters because if Mr. Markham is deemed to not have at least 15 years of what's called qualifying coal mine employment, he is not entitled to the 15-year presumption. As I said, it's a very strong presumption that shifts the burden of proof to the operator. But the ALJ found it. You're saying the ALJ didn't make findings. That finding is pretty well implied in the decision, don't you think? No, Your Honor. The ALJ didn't make findings about substantial similarity. What he found was that the above-ground coal mine employment occurred at the location of an underground mine site. And for that reason, he felt that it was not necessary to compare the dust content, if you will, of the above-ground mine employment with the underground employment. And it's my contention in the opening briefing here today that that particular subsidiary finding is not supported by substantial evidence. In fact, the only evidence that was offered to support it is testimony from the miner that he was, if I could quote here, that he was switched from above-ground work to underground work throughout his career and back up again. And a statement in his employment application that, writing by the Kansal or Kordo Mining Entry, that his work in the underground mine was underground. Well, that's unremarkable that work in an underground mine site would indeed be underground. That doesn't speak with any particularity about where his above-ground work occurred, whether it occurred at that site or at an entirely different site. Well, didn't he also testify that even when he was above ground, he'd be covered with coal the same way as when he was below ground? No, he testified that he would be covered with dust. And one of the important character, one of the important distinctions about whether a particular above-ground work is substantially similar is answered by the wording of the regulation, which states that conditions in a mine other than an underground mine, in other words above-ground mine, will be considered substantially similar to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal mine dust while working there. And in the Sterling case, which you brought to my attention just recently, this court stated that the statutory presumption in this case applies only if the miner was regularly exposed to coal mine dust, not any kind of dust, while working there and that the distinction between coal mine dust and any other type of dust or fume exposure may well be significant. In Mr. Markham's above-ground work, he testified that, for example, his welding above-ground work, he was exposed to welding fumes, smoke, things like that. When he was driving a truck as part of his above-ground work, he was exposed to roadway dust, things of that nature. That's not coal mine dust. It's an important distinction to draw between whether he's regularly exposed to coal mine dust and some other type of dust, dirt, fumes, whatever. And why is that? Well, it's because the Blacklin Benefits Act is not a general workers' compensation law. It doesn't provide compensation for any type of impairment or harm or even any type of dust exposure that may occur. It's only coal mine dust exposure. Can I ask one question? Yes. Quarto, I guess, is your client, right? Yes. Are they the employer whose mine he worked during this question about whether the mine he worked at was above-ground or not? Yes. Would they have had available records showing which mines he worked at for which periods? Quarto may well have had records, but the problem here is that it's not Quarto's burden to establish. I understand that. I'm just asking whether they would have had records. They most likely would be employment records to explain where his work occurred, but that evidence was not submitted in this case. And it's important that you mention that because on that particular question, it is the claimant's burden of proof to show where his above-ground mining occurred, not Quarto's. So the fact that the claimant just explained that… We're evaluating substantial evidence, and there is some evidence, but you say it's kind of weak. The ALJ can't take into account that it would have been easy for the other side to prove the contrary. No, I don't believe he can because I think that the ALJ is allowed to make reasonable inferences from what evidence is there, but he's not allowed under the burden of proof to simply look at the other side and say, well, you haven't rebutted what they said about the employment, therefore I'm finding it established for the claimant. Okay. Your Honor, I see the amount of time. If you have any more questions… Thank you. Thank you very much. I will conclude. May it please the Court. Your Honors, my name is Heath Long. I represent the respondent or the original black lung claimant, Clifford Markham. I will be splitting my time with the solicitor, and there are two issues. Is there any space between your position and the solicitor's space today? No. Okay. No, and to be honest with you, we sort of split it up with the two issues, though I can… That's fine. I just like to know if there's different perspectives, but you all are locked tight in your positions today. We are, Your Honor. Specifically, Your Honor, and you mentioned the standard of review is substantial evidence, and specifically in black lung cases, issues of credibility are left within the sole discretion of the ALJ and cannot be disturbed on appeal. The 15-year presumption. I want to talk about the judge's decision, the administrative law judge's decision in order, and the evidence and what he looked at. Number one is that the judge had a chance to look at the Social Security earnings records. Those are present in the Department of Labor evidence. It indicates where people work, not what site, but what employer and for how long. It's clear in those records, and it's clear from Mr. Markham's testimony, that he worked for approximately three years at other mine sites underground, and then he started to work for Cordo number four. Now, number four mine is one place. That's a mine. Is that in the record? Yeah, it's in his testimony. That it's all in one place? Yeah, well, number four, that he only worked at number four mine. Then you went on to say, and that's only one location. I mean, I don't know that. Is that true? I want to apologize because I think what I'm trying to indicate is that his testimony was that he worked at number four mine. That's it. So I'll take away anything else. Do we know from the record that number four mine is one particular hole in the ground, or it might be? From his testimony, I think it's clear, but I think it's open to interpretation. The miner indicated that he worked at number four mine. That mine changed hands from North America to Consol to Cordo, but he worked at the same mine site as he indicated. Now, the judge, the administrative law judge, reviewed the Social Security earnings records. He reviewed the Department of Labor forms that you fill out when you apply for Black Lung as to where you worked. The indication of whether or not, and really the question is, is number four an underground coal mine site? And is that where the claimant worked? Why that is, is because the Department of Labor regulations indicate, and I think Island Creek, Kentucky Mining versus Ramage here in the Sixth Circuit upheld this. The Department of Labor definition of underground mine and concluding that no showing of comparability of conditions is necessary for an above-ground employee at an underground mine. So if you work above ground at an underground mine, you don't have to show the dust, it's presumed. They're not countering that. They're just suggesting, as I understand it, that it's not clear from the fact that he was at quote-unquote number four mine that he was at an underground mine all that time. So that's why I'm getting at that. That doesn't have anything to do with whether if it was an underground mine, we make the presumption. The claimant testified, and that is in the record, that when he went to work at number four mine, you had to put three years in underground before you were allowed to bid to an above-ground job. So he indicates that he did. He worked underground for three years. He bid to an above-ground job. Then when we asked him to clarify what years he worked underground and above ground after that, he indicated, I can't because they would keep switching me. They, being the employer, would keep switching me underground, and then I would go back above ground. So I was a welder for a period of time above ground. Then they would switch me underground. Then they would take me back up. He said I was a machinist. I worked at the prep plant, at the plant above the ground, to do the same type of work, welding, machining, things like that. And then finally, I think he indicated that he actually drove a truck on the site at that, which he indicated that they dumped and loaded the truck at the prep plant. So the question of whether or not he worked at multiple sites isn't really a question. His testimony was, I worked at corridor number four from 1972 to 1994. That was the only place he worked for those 22 years. The other three years he worked at other underground mines. And the judge, in his decision and order, took a look at the testimony, so security earnings records that indicate where he worked, and the forms that the miner filled out originally that indicated what mines he worked at. And that is the issue that I'll be covering today, if you have any questions. Thank you. Good morning. May it please the Court, my name is John Rolfe, and I represent the Director, Office of Workers' Compensation Programs. This is a substantial evidence case, and the evidence submitted below clearly demonstrates that the ALJ acted well within its wide discretion in awarding benefits. Claimant's counsel just sort of detailed the amount, the testimony about the underground mine. The important thing is it's unrobotted, and all that it has to support is a reasonable inference. Even if you could support another decision based on that, that still wouldn't be good enough. It just has to be reasonable, and I think it's eminently reasonable. But let's deal with the Ohio Central case. Sure. I mean, they are trying to engage with the preamble. They disagree with the science, and they are trying to get an ALJ or the Board to at least engage with the contrary studies that have been done since the preamble. Well, that's true, and it's not true. It's not the case that they've done that all along. In fact, in their opening brief, their primary argument was that it's consistent with the preamble. Then in the meantime, Central Ohio comes out. It's pretty much on all four squares with this case, and they pivot in their reply brief, and they say, no, that's not the case. All along, we've been arguing that the preamble is invalid. Well, they didn't make that argument to the ALJ. They didn't make it to the Board, and they made it, first time here, full-throated in their reply brief. So what was the argument then below? What did they – how did they frame it? The argument was that at least in terms of – and the specifics of it was that Dr. Rosenberg doesn't disagree that certain types of COPD decrease the ratio. What he said, though, was that it's different between coal mine dust and smoking. That's exactly – but isn't that the point? Isn't that the point that they're trying to make here? That it's the – that the ratio doesn't change for coal mine. It changed – but it does change for smoking. Correct. And it – that's the point they've been trying to make all along. Right. Their argument, though, was that that's consistent with the preamble, and I don't think it is. And this court in Central Ohio came out and specifically said that's not consistent with the preamble. So when that happened, they pivoted and said actually all along we have been saying it's inconsistent and the preamble is invalid. Well, have they sufficiently engaged with the science, which is what Central Ohio left open? I would say absolutely not. Why not? First of all, the studies that he cites for the propositions that he cites don't deal with that central proposition, which is the preservation of the ratio. For tangential things, you could treat it almost like a motion to dismiss, admit all of those sites, and it still doesn't challenge that central point. And actually, if you read his conclusion when he says that the preamble is invalid, the study he cites for that are pre-preamble studies. So they're the studies that actually underlie the preamble. I just don't think there's any difference between this case and Central Ohio. Counsel, am I correct that the ALJ's decisions relies on Third Circuit cases because it assumes that the Third Circuit has jurisdiction over this case? I'm not sure if that is the case. I think it is. I have it before me. If that is the case. The ALJ was wrong in that regard? If that's the case, he was wrong, but it would be harmless error because what is controlling this case is right. Well, it's not a harmless error if we don't have jurisdiction over the case. You do have jurisdiction. There's no dispute that the mine is located in Ohio. Well, why does the ALJ say that the last employer was in Pennsylvania? He must have made an error. I don't know why he did that. But I do think this case is controlled, and there's no difference between Ramage and Central Ohio. I'm just talking about whether we have jurisdiction. Sure. How do we know whether it's in our circuit or another circuit? What determines that? It's where the government, right? Right. It's where the harm took place. In this case, the last harm took place. Where the harm took place? Correct. Not the last employer? It's where the harm took place. What if the harm is black lung, right? Correct. So if he gathered black lung by being in various places. But that wasn't the case here. He did it his last 23 years, and it's undisputed in Ohio at the number four mine, which is in Pennsylvania. So it's the location of the mine, you're saying? Correct. Correct. Where the harm took place. I don't think there's any – I think this case was probably appropriate for summary affirmance after Central Ohio came out. There's no distinction. Unless there's any other questions, I don't have anything further. Thank you. Your Honor, just a few quick points of rebuttal. The department says that the argument about whether the science in the preamble is invalid was raised for the first time in the reply brief. That is a mischaracterization of our argument. In our opening brief, we argued on pages 16 to 21 that Dr. Rosenberg is sufficiently attacking the science in the preamble and showing through new medical studies that it is invalid. As I said, we also made an additional argument that he was consistent with the preamble, but that argument was made before Sterling was decided. Sterling came out after the opening brief was published, and I decided that I could not make that argument in light of Sterling. So I've relied on the additional argument that I have made in the opening brief and preserved all along, that the science in the preamble is now overcome by new medical studies. With respect to the jurisdiction, actually the jurisdiction of the court, the case lies in the jurisdiction of wherever the harm occurred, as I said. And in this case, it occurred to whatever mines Mr. Markham worked in. And here he worked undoubtedly in an Ohio mine, which is in the Sixth Circuit, so jurisdiction is valid here in this case. The Department of Labor also said that this case is essentially on all fours and everywhere subject to Sterling. Well, that leaves out the fact that the key argument we're making here today was deemed by the court to be not made in Sterling, and the court expressly made the invitation to future appellants to make that argument that I'm making here today. So the court is allowing this argument to be made, which we are not making, so I don't understand how that can be completely on all fours with Sterling now. I mean, that is an argument that's properly preserved for this court and right for its review. The Department also said that the science, or I should say the medical studies, that Dr. Rosenberg relied on are not in any way convincing or persuasive or don't speak to coal mine dust. These are all matters of fact finding. These are all matters that should be resolved by the agency. They should not be resolved by a court of appeals just looking at the science and saying, well, this isn't relevant. The Blackwell Benefits Act gives discretion to the ALJ and the duty to the ALJ to consider the persuasiveness and credibility and relevance of these studies. That was not done here. The ALJ chose not to consider them. Instead made a mechanical deference to the findings of the preamble that Rosenberg is not consistent. Well, that's not the question now. The question is whether, regardless of what the preamble says about the similarity of coal mine dust and tobacco smoke, has that position been overcome by ongoing medical science? That was not resolved in this case, and it is not consistent with administrative law or the Blackwell Benefits Act to just say that it never needs to be resolved. You can always rely on a 14-year-old document about what science is. Science continues to change. And just one comment about the claimant's argument about the above-ground coal mine employment. The question is not whether the Cordo No. 4 mine is an underground mine. It is an underground mine. The question is whether the above-ground work that Mr. Markham did while he was employed with Cordo occurred at that No. 4 mine or at another mine altogether. The claimant's attorney had an opportunity to question him about this, about where it occurred. He didn't do that for whatever reason. Any indication that it was at another mine? There's no evidence in the record about that, no. And, Your Honor, I see my time is up. Thank you very much. Thank you, Counsel. The case will be submitted. I appreciate your arguments. Please call the next case.